## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**ELIZABETH CLARE PITCOCK BEST[1]**                    **PLAINTIFF**

**V.**                            **No. 3:23-CV-00237 BRW**

**MARTIN O'MALLEY,**
**Commissioner of Social Security**                    **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Billy Roy Wilson. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Wilson can adopt this RD without independently reviewing the record.

### I.    Background

Ms. Elizabeth Best filed an application for social security benefits due to chronic pain syndrome, fibromyalgia, degenerative disc disease, scoliosis, kidney disease, arthritis, and nephrolithiasis. *Tr. 20, 212.*

Ms. Best's claim was denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a telephonic hearing on September 30,

---

[1] On November 13, 2023, Plaintiff filed this case using the name Elizabeth Clare Pitcock. However, she appears to have gotten married before filing her April 2024 brief because it lists her name as Elizabeth Clare Pitcock Best.

2022, where Ms. Best appeared with her lawyer, and the ALJ heard testimony from Ms. Best and a vocational expert ("VE"). *Tr. 36-68*. The ALJ issued a decision on March 6, 2023, finding that Ms. Best was not disabled. *Tr. 17-29*. The Appeals Council denied Ms. Best's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-3*.

Ms. Best, who was forty-four years old at the time of the hearing, has a college education, and has past relevant work experience as a grant coordinator, administrative assistant, accounting clerk, and data entry clerk *Tr. 26, 64*.

## II.    The ALJ's Decision[2]

The ALJ found that Ms. Best had not engaged in substantial gainful activity since April 9, 2021, the alleged onset date. *Tr. 19*. He found that Ms. Best has the following severe impairments: degenerative disc disease; chronic pain syndrome; fibromyalgia; and scoliosis. *Tr. 20*. However, the ALJ concluded Ms. Best did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 21*.

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g); 20 C.F.R. § 416.920(a)-(g).

According to the ALJ, Ms. Best had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) only occasional stooping, crouching, kneeling, bending, and crawling; and (2) no climbing ladders, ropes, or scaffolds. *Id*.

In response to hypothetical questions incorporating the above limitations, the VE testified that a significant number of potential jobs were available in the national economy that Ms. Best could perform, including, her past relevant work as an accounting clerk, administrative assistant, and grant coordinator. The VE also testified Ms. Best could perform other representative occupations such as document preparer, addresser, and call-out operator. *Tr. 26-28, 66*. Accordingly, the ALJ determined that Ms. Best was not disabled.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence in the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence: in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must

consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.    Ms. Best's Arguments for Reversal

Ms. Best contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in: (1) not finding her chronic kidney and abdominal problems to be severe impairments; (2) not giving sufficient weight to her treatment provider's opinion; and (3) analyzing her physical limitations from pain. *Doc. 12*. After carefully reviewing the record as a whole, the undersigned recommends affirming the Commissioner.

### C.    Analysis

#### 1.    The ALJ's Assessment of Ms. Best's Chronic Kidney and Abdominal Problems is Supported by Substantial Evidence.

Ms. Best argues the ALJ erred when he did not find her chronic kidney and abdominal problems to be severe. *Doc. 12*. To prove these impairments are severe, Ms. Best must show they significantly limit one or more basic work activities. *Gonzales v. Barnhart*, 456 F.3d 890, 894 (8th Cir. 2006). To prove severity, Ms. Best relies on her August of 2020 and September of 2020 hospitalizations, her reoccurring nephrolithiasis (kidney stones), and her cystoscopy with stent removal

in October 2020. *Doc. 12 at 14, 16-19*. The ALJ acknowledged Ms. Best's history of reoccurring kidney stones; however, these issues occurred before her disability onset date of April 9, 2021. The ALJ noted Ms. Best was diagnosed with subsequent kidney stones on September 27, 2021, but this reoccurrence was caused by her failure to follow her provider's instructions to take 12.5 mg of hydrochlorothizide daily. *Doc. 14 at 5, Tr. 1563*. A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of her alleged disability. See *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). The ALJ noted that, while Ms. Best previously had kidney and abdominal impairments, the conditions were no longer severe after her October 2021 procedure to remove kidney stones. *Tr. 20*. There is no evidence in the record suggesting Ms. Best's kidney issues remained severe after her October 2021, procedure. In 2022, following x-rays, Ms. Best's treatment provider noted that she was "negative for definite urinary tract stone." *Tr. 2063*.

Though Ms. Best cites ongoing kidney and abdominal pain, the objective medical evidence does not show her kidney issues and abdominal pain rose to the level of a severe impairment. Subjective complaints alone, without credible supporting medical evidence, are not sufficient to establish a severe impairment. *Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006).

Substantial evidence supports the ALJ's conclusion that Ms. Best's kidney and abdominal issues are non-severe.

### 2.    The ALJ Gave Sufficient Weight to Ms. Best's Treating Physician's Opinion.

Ms. Best contends the ALJ did not give enough weight to APRN Andrew Landrum's medical source opinion, which Ms. Best argues is supported by substantial evidence. *Doc. 12.* According to Nurse Landrum, Ms. Best has systemic lupus erythematosus, fibromyalgia, rheumatoid arthritis, chronic pain syndrome, and chronic back pain. *Tr. 1528.* However, the ALJ found insufficient evidence in the medical record to support the extreme restrictions in Nurse Landrum's medical opinion. *Tr. 25-26.* A treatment provider's statements may be discounted if they are inconsistent with the overall assessment of the treatment provider or the opinions of others, especially where the other opinions are supported by more or better medical evidence. *Prosch v. Apfel*, 201 F3.d 1010, 1013-14 (8th Cir. 2007); *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) (an ALJ is not required to give controlling weight to the opinion of a treating physician if the opinion is inconsistent with the other substantial evidence in the record).

Nurse Landrum's opinion also lists Ms. Best's limitations on a checkbox form with little to no explanation. The ALJ noted "the pain management records along with the assistance provided by the claimant in completing the form fail to support the limitations opined by APRN Landrum." *Tr. 26.* An ALJ may assess

"little evidentiary value" to a treating source's opinion if it is "rendered on a check-box and fill-in-the-blank form" with little or no explanation or citation to medical evidence. *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022).

According to Nurse Landrum's medical source statement, Ms. Best suffers from systemic lupus erythematosus and rheumatoid arthritis. *Id*. However, on March 29, 2022, Ms. Best's rheumatologist noted "no clinical evidence for the presence of an autoimmune rheumatic disease process at this time." *Tr. 1863*. In fact, Ms. Best's rheumatologist suggested she engage in "mild regular exercise, such as yoga" to help manage her chronic pain. *Id*. However, Ms. Best testified that she had done yoga only two times since her visit. *Tr. 45*. An ALJ may properly consider a claimant's apparent non-compliance with treatment in evaluating the validity of her alleged physical limitations. See *Holley*, 253 F.3d at 1092. Also, failure to follow prescribed treatment may be used to discredit subjective allegations. *Brown v. Heckler*, 767 F.2d 451, 452 (8th Cir. 1985).

When asked if any doctor had given her any restrictions to her activities, Ms. Best answered, "Not specifically." *Tr. 54*. Despite the extreme restrictions on Nurse Landrum's medical source statement, none of Ms. Best's medical providers ever imposed any specific restrictions regarding her physical limitations. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

The record does not support Ms. Best's argument that the ALJ failed to give enough weight to Nurse Landrum's opinion.

### 3.    The ALJ's Opinion on Ms. Best's Physical Limitations Due to Pain is Supported Substantial Evidence.

Nurse Landrum listed both chronic back pain and chronic pain as two of Ms. Best's physical impairments. *Tr. 1528*. The ALJ found Ms. Best's chronic pain syndrome to be a severe impairment. *Tr. 20*. Ms. Best reported experiencing pain in her lower back, right and left flank, groin, and radiating down her left leg. She also reported pain in her joints, back, hips, shoulders, neck, wrists, knees ankles, and feet. *Tr. 22, 303*. Ms. Best allegedly lives in "constant pain [and] hurt is the norm." *Tr. 22*, *260*. She asserts that activity increases pain, rest increases pain, and nothing takes the moderate to severe pain away. *Tr. 303*. The ALJ considered Ms. Best's fibromyalgia and chronic pain syndrome when issuing his decision, but noted that neither equals a listing, either alone or in combination with another impairment. *Tr. 21*.

Ms. Best sought treatment for her pain at the Pain Treatment Centers of America and received treatment from March 21, 2019 to September 21, 2020. *Tr. 1889, 1944*. During her first visit on March 21, 2019, Ms. Best complained of worsening pain "during cold and rainy weather, when lying flat on stomach, when getting up from sitting or lying down, when turning head side to side, when looking up, . . . while doing household chores, when coughing and for no specific

reason." *Tr. 1944.* She also rated the severity of her pain as usually an eight out of ten during this period, while she was still working. *Id.* At an August 12, 2019 appointment, Ms. Best had a hip bursa steroid injection. *Tr. 1932.* At her follow-up appointment a month later, she said the previous hip injection decreased her pain significantly for over three weeks, allowing her to walk and be active. *Tr. 1930.* On November 13, 2019, Ms. Best complained that her earlier hip bursa steroid injection provided less pain relief and improvement in function and quality of life than her then current regimen of opioid therapy. *Tr. 1919.* After another hip bursa steroid injection on February 24, 2020, while still taking pain medication, Ms. Best again reported decreased pain. *Tr. 1907.* She received another hip bursa injection on May 4, 2020. On August 30, 2020, Ms. Best advised that she no longer wanted hip injections but wanted to continue her oral medication. Ms. Best's medical records reveal that she failed to give a urine specimen at her March appointment; her January UDT[3] was unacceptable; and she again did not bring her opiate-based medications in for a pill count as instructed by the provider. Ms. Best's treatment provider advised her that if she did not follow the rules, he would discontinue her opiate-based medications. *Tr. 1900.* On September 21, 2020, Ms. Best resigned from being a patient with Pain Treatment Centers of America. *Tr. 1889.*

---

[3] Urine drug testing.

The ALJ noted that, although Ms. Best claimed she was in debilitating pain all the time, she voluntarily discontinued her pain treatment before her disability onset date. *Tr. 24*. An ALJ is entitled to discount a claimant's complaints of pain when such complaints are inconsistent with the evidence as a whole. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

On March 29, 2022, Ms. Best saw a rheumatologist, who confirmed her fibromyalgia. *Tr. 25*. However, a diagnosis of fibromyalgia alone does not establish a disabling impairment. *Perkins v. Astrue*, 648 F. 3d 892, 899-900 (8th Cir. 2011). The rheumatologist noted Ms. Best's normal gait and station; normal muscle tone and motor strength throughout the upper and lower extremities; retained full range of motion in both hands; and had no swelling. Ms. Best's shoulders also retained full range of motion with no pain on motion and were nontender with no swelling. Her lower extremities were within normal limits, other than tenderness noted in her trochanters upon palpation. Her lumber spine also retained full range of motion. *Tr. 25, 1863*.

As for activities of daily living, Ms. Best makes meals, gets her son to and from school, runs errands (including grocery shopping), and does household chores. *Tr. 307*. Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

The ALJ's analysis of Ms. Best's physical limitations from pain is supported by substantial evidence.

## IV.    Conclusion

The ALJ applied proper legal standards in evaluating Ms. Best's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated 22 July 2024.


_____
UNITED STATES MAGISTRATE JUDGE